JUDGE BATTS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GEORGE HAHN,

                    Plaintiff,

      v.

DOMY ROOMS, INC.,

                    Defendant.

**07 CIV 8013**

Civ. _____

**COMPLAINT**

**JURY TRIAL DEMANDED**

SEP 1 2 2007

The Plaintiff, George Hahn ("Mr. Hahn"), by his attorneys, Latham & Watkins LLP, for his Complaint against the Defendant, Domy Rooms, Inc. ("Domy Rooms"), alleges as follows:

## NATURE OF THE ACTION AND PRELIMINARY STATEMENT

1.     This is a civil action by George Hahn to enforce the federal Fair Housing Act, 42 U.S.C. § 3601 *et seq.* (the "FHA"), the New York State Human Rights Law, Executive Law § 290 *et seq.*, and the New York City Human Rights Law, Title 8 of the New York City Administrative Code § 8-101 *et seq.*, and redress discrimination on the basis of disability.

2.     George Hahn is desperately seeking a new apartment in order to complete a course of medical treatment necessary to sustain his life. However, when Mr. Hahn called Domy Rooms in response to advertisements for rental housing, the Defendant twice refused to let him apply for apartments because he is disabled. Mr. Hahn receives disability benefits, and for this reason, he was told, he did not qualify for any of the rooms the Defendant had available. Agents or employees of the Defendant explained to Mr. Hahn that Domy Rooms only rents to individuals who receive income from a current job, and who can produce a pay

stub. In fact, testing conducted by a fair housing organization confirmed that the Defendant's policy is to refuse to rent to individuals who receive income from disability benefits.

3.      Domy Rooms intentionally discriminated against Mr. Hahn by denying him the opportunity to apply for any rental apartments because he is disabled. By declining to waive the pay stub requirement in light of the source of Mr. Hahn's income, Domy Rooms also refused to provide a reasonable accommodation for Mr. Hahn's disability. Furthermore, the Defendant's policy to deny rental housing to individuals who receive disability income disproportionately harms disabled individuals.

4.      The Defendant's discrimination has caused Mr. Hahn incalculable damage. He suffers from end-stage emphysema and a serious pulmonary disease. As a result of the Defendant's actions, Mr. Hahn has been forced to continue living in housing that is life-threatening due to his extremely fragile health. He has been hospitalized several times since contacting the Defendant, and is in dire need of a safe place to live. He is therefore seeking injunctive relief as well as damages against the Defendant.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, 28 U.S.C. § 2201 and 42 U.S.C. § 3613. This Court has supplemental jurisdiction over the New York state law and New York city law claims pursuant to 28 U.S.C. § 1367.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant Domy Rooms, Inc. resides in this District, the property that is the subject of the action is situated in this District, and the events giving rise to this complaint occurred in this District.

## THE PARTIES

7.      The Plaintiff George Hahn is a disabled individual who currently resides at 331 East 33rd Street in New York, New York. In May 2007, Mr. Hahn twice attempted to rent an apartment in Manhattan through Domy Rooms.

8.      The Defendant Domy Rooms is an active business corporation registered with the New York State Department of State. Upon information and belief, Domy Rooms maintains offices at 3668 Broadway in New York, New York, and also conducts business from an office or residential space located at 3472 Broadway in New York, New York.

## FACTS

### Mr. Hahn's Disability and His Urgent Need for Rental Housing

9.      Mr. Hahn was a successful systems engineer in New York until 1993, when he was diagnosed with chronic depression and anxiety. At that time, Mr. Hahn stopped working, and, based upon his mental health conditions, began receiving Social Security Disability ("SSD") benefits from the federal government. Mr. Hahn currently receives $1,749 in SSD benefits per month.

10.     Mr. Hahn's physical health is deteriorating. He suffers from end-stage emphysema, a type of Chronic Obstructive Pulmonary Disease ("COPD") that intensifies over time. Mr. Hahn's doctors agree that, without proper treatment, he could die. Mr. Hahn's doctors also have diagnosed him with Macro-Bacterium Avian Intercellular Syndrome ("MAI"), also known as Lady Windermere's Syndrome, which is a pulmonary disease related to Tuberculosis.

11.     Mr. Hahn has great difficulty breathing and completing ordinary tasks. He must carry an oxygen tank with him at all times. Because he is unable to walk more than

one block without having to stop and rest, his doctors have prescribed the use of a motorized wheelchair. Mr. Hahn can no longer climb stairs.

12.    Mr. Hahn has been hospitalized six times over the past two years for pneumonia and infections related to his emphysema. Two of those hospitalizations took place after May 2007.

13.    Treatment for Mr. Hahn's COPD and MAI is very costly. Although he receives Medicaid, he must pay $1,000 in deductible expenses each month to offset the cost of medical care.

14.    Unfortunately, Mr. Hahn's significant health care costs and limited income constrain his housing options. Except for a brief stint in a nursing home and hospitalizations, Mr. Hahn has lived in an apartment for several years with a roommate who is a chronic cigarette smoker.

15.    In November 2005, Mr. Hahn met with pulmonary specialists at the Columbia-Presbyterian Lung Transplant Program ("Lung Transplant Program"). They told him that he would probably qualify for a transplant based on need. However, they cautioned that dangerous living conditions might prevent Mr. Hahn from being placed on the recipient list. Prior to authorizing the procedure, doctors must make sure that each patient has a safe long-term recovery environment.

16.    Sadly, concerns about Mr. Hahn's housing proved to be well-founded. Since 2005, Mr. Hahn has taken, and failed, several screening tests for receiving a lung transplant. In one test, his blood sample tested positive for nicotine, due to the second-hand smoke in his apartment. In another test taken in May of this year, he met every requirement delineated by the Lung Transplant Program except for the living arrangement rules.

4

17.    Mr. Hahn's doctors will continue to monitor his eligibility, and will initiate the screening process again as soon as he informs them that he has secured stable housing. They have reiterated, however, that until Mr. Hahn does so, he cannot receive a lung transplant.

**Mr. Hahn Searches for an Apartment**

18.    Because Mr. Hahn's current apartment is on the fourth floor of a building without an elevator, he is unable to use his wheelchair. He is effectively shut in, and would be unable to flee in the event of a fire. Mr. Hahn's roommate continues to smoke in the apartment. This housing situation endangers Mr. Hahn's life.

19.    Mr. Hahn has been searching for a safe, affordable place to live since 2005. While he has applied for public housing, upon information and belief, the waiting list for accessible units is very long, and Mr. Hahn could wait for several years before any become available. He is therefore additionally searching in the private market. However, Mr. Hahn has had great difficulty finding a suitable apartment that he can afford.

20.    On or about May 27, 2007, Mr. Hahn found a Craig's List posting on the internet for rooms available to rent on a weekly basis. Mr. Hahn could afford to pay the prices listed, which ranged from $100–$125 per week. The posting was listed under the name Domy Rooms, and included the phone number (212) 491-9843.

21.    Mr. Hahn called the listed number, and asked the woman who answered the phone whether Domy Rooms had any rooms available for rent. She said that Domy Rooms did have rooms available. Mr. Hahn then asked about the process for applying to rent a room. The woman listed the items Mr. Hahn would need to bring to Domy Rooms's offices, one of which was a pay stub, and made it clear that Domy Rooms wanted to rent to individuals who worked. When Mr. Hahn mentioned that he received federal Social Security Disability income

because of his disability, the woman stated that she could not help Mr. Hahn, and hung up the phone.

22.    Upon information and belief, the individual who spoke to Mr. Hahn was an employee or agent of Domy Rooms.

23.    On or about May 29, 2007, Mr. Hahn saw another advertisement for rooms available for rent and called the listed phone number, (212) 491-9843. Mr. Hahn did not realize this was the same phone number for Domy Rooms that he had called on or about May 27, 2007.

24.    A woman answered the phone, and referred Mr. Hahn to a man after he stated that he was calling about the Craig's List advertisement. Mr. Hahn told this individual that he was interested in the rooms advertised for rent. The man told Mr. Hahn to bring a picture identification, the first week's rent, a $50 application fee and a $100 agency fee to 3472 Broadway between 141st and 142nd Streets in New York.

25.    Mr. Hahn was also told that he would need to bring his pay stubs. Mr. Hahn replied that he did not have any pay stubs because he received SSD payments for his disability. The individual told Mr. Hahn that Domy only rented apartments to individuals who received paychecks.

26.    Upon information and belief, the second individual who spoke to Mr. Hahn also was an employee or agent of Domy Rooms.

**Fair Housing Justice Center Testers Inquire About the Apartment**

27.    On or about March 14, 2007, Mr. Hahn contacted the Fair Housing Justice Center ("FHJC"), a non-profit organization, in connection with his efforts to obtain adequate housing. As part of its activities, the FHJC challenges discrimination that restricts

6

access to housing.  To investigate allegations of unlawful conduct, the FHJC employs fair
housing "testers," or individuals who, without the intent to rent an apartment, pose as renters for
the purpose of collecting evidence of discrimination.  In response to Mr. Hahn's complaint, the
FHJC conducted a testing investigation of Defendant's housing practices.

28.    On or about June 7, 2007, an adult female tester (the "First Tester")
called the phone number for Domy Rooms to inquire about rental apartments.  The First Tester
asked the woman who answered the phone if any rooms were available.  She replied that there
were, and described the areas of the city where the rooms were located.  The First Tester then
represented to the woman on the phone that she was inquiring on behalf of her father, who was
disabled and received SSD benefits, and asked, "That wouldn't be a problem, would it?"  The
woman replied, "Yes – 'cause he's not working, right?"  The First Tester stated that her father
was not working, but asserted that he "does have a steady income."  The woman responded,
"Usually, these people, they want persons who [are] working," because they "don't want [the
tenants] to be home all day . . . wasting electricity."

29.    The woman on the phone asked the First Tester to hold for a moment.
When she came back, the First Tester asked the woman's name.  She replied, "Judy, J-U-D-Y."
Upon information and belief, Judy was an employee or agent of Domy Rooms.  The First Tester
also asked where the office for Domy Rooms was located.  Judy stated that it was in the lower
level of a building at 1668 Broadway, between 151st and 152nd Streets in New York.

30.    On or about June 8, 2007, an adult male tester (the "Second Tester")
called the phone number for Domy Rooms to inquire about rental apartments.  The Second
Tester asked the woman who answered the phone if any rooms were available.  The woman
answered yes, advised that rents for available rooms ranged from $125–$150 per week, and

7

explained where the rooms were located. The Second Tester asked what the woman's name was, and the response she gave sounded like "Judy."

31.    The Second Tester then asked about various features of the available rooms, as well as the application process for Domy, and the woman on the phone ("Judy") responded to each of his questions. She mentioned that the Second Tester would have to provide a weekly pay stub in order to apply for one of the rooms. The Second Tester also asked where Domy's office was located. The woman stated that it was in the lower level of a building at 1668 Broadway, between 151st and 152nd Streets in New York.

32.    The Second Tester then disclosed that he received SSD benefits. He asked Judy, "Do you know what that is?" She responded, "What, SSI?" He replied, "SSD - disability." Judy said, "In that case, sir, I would not think I could help you." When asked why not, she stated, "Usually these people, they want persons who work, that don't stay a lot of time . . . don't use a lot of electricity."

33.    Judy further explained that applicants to Domy must provide the company name, address and phone number of their employers. The Second Tester reiterated that he had a verified income. Judy responded, "They don't care, 'cause you're still home." Preferred tenants, she continued, would be "leaving in the morning, coming back in the afternoon, [or] leaving in the afternoon, coming [home] at night . . . you know, persons who work." The Second Tester then stated, "OK . . . so I shouldn't even come up to see you?" She replied, "No . . . it's gonna be a waste of your time."

34.    Before hanging up, the Second Tester asked for Judy's last name, and she replied, "Martinez."

35.     On information and belief, both testers spoke with the same woman, who identified herself as Judy Martinez.

## COUNT I

### Violation of Federal Fair Housing Act, 42 U.S.C. § 3601(f)(1): Refusal to Rent

36.     The Plaintiff repeats and realleges paragraphs 1 through 35 of this complaint as though fully set forth herein.

37.     Mr. Hahn is handicapped as that term is defined in the Fair Housing Act, 42 U.S.C. § 3602(h).

38.     The Defendant's conduct constitutes discrimination in the sale or rental of a dwelling, or a denial of a dwelling to a buyer or renter because of a handicap of that buyer or renter, in violation of the Fair Housing Act, 42 U.S.C. § 3604(f)(1)(A).

39.     The Defendant's conduct was intentional, willful, and made in disregard for the rights of others.

40.     Mr. Hahn is an aggrieved person as defined in 42 U.S.C. § 3602(i), has been injured by the Defendant's discriminatory conduct, and has suffered damages as a result.

41.     Accordingly, under 42 U.S.C. § 3613(c), the Plaintiff is entitled to actual damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs.

## COUNT II

### Violation of Federal Fair Housing Act, 42 U.S.C. § 3601(f)(3): Failure to Provide Reasonable Accommodation

42.     The Plaintiff repeats and realleges paragraphs 1 through 35 of this complaint as though fully set forth herein.

43.     Mr. Hahn is handicapped as that term is defined in the Fair Housing Act, 42 U.S.C. § 3602(h).

44.    The Defendant's policy is to rent only to people who are employed. Because Mr. Hahn is not able to work due to his disability, he twice requested a reasonable accommodation by asking Domy Rooms to consider his SSD benefits the same as the equivalent amount of employment income.  The Defendant refused.

45.    The accommodation requested was reasonable and necessary to afford Mr. Hahn equal opportunity to housing available through Domy Rooms.

46.    The proposed accommodation would not have imposed an undue financial or administrative burden on the Defendant and did not require a fundamental alteration in the nature of the operations of Domy Rooms.

47.    The Defendant's conduct thus constitutes a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford a handicapped person equal opportunity to use and enjoy a dwelling, 42 U.S.C. § 3604(f)(3)(B).

48.    Mr. Hahn is an aggrieved person as defined in 42 U.S.C. § 3602(i), has been injured by the Defendant's discriminatory conduct, and has suffered damages as a result.

49.    Accordingly, under 42 U.S.C. § 3613(c), the Plaintiff is entitled to actual damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs.

## COUNT III

### Violation of Federal Fair Housing Act, 42 U.S.C. § 3601(f)(1): Disparate Impact

50.    The Plaintiff repeats and realleges paragraphs 1 through 35 of this complaint as though fully set forth herein.

51.    Mr. Hahn is handicapped as that term is defined in the Fair Housing Act, 42 U.S.C. § 3602(h).

52.     The Defendant's stated policy of refusing to accept individuals receiving SSD benefits can only affect individuals who are disabled.  Additionally, the Defendant's broader policy of requiring that all renters receive paychecks from employers excludes a disproportionate number of disabled individuals.

53.     The Defendant's conduct thus results in discrimination against handicapped individuals, in violation of 42 U.S.C. § 3601(f)(1).

54.     Mr. Hahn is an aggrieved person as defined in 42 U.S.C. § 3602(i), has been injured by the Defendant's discriminatory conduct, and has suffered damages as a result.

55.     Accordingly, under 42 U.S.C. § 3613(c), Plaintiff is entitled to actual damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs.

## COUNT IV

### New York State Human Rights Law
### (N.Y. Executive Law § 290 et seq.)

56.     The Plaintiff repeats and reallege paragraphs 1 through 35 of this complaint as though fully set forth herein.

57.     The Plaintiff suffers from a disability as that term is defined in Article 15 of the New York Executive Law § 292(21).

58.     The Defendant's conduct constitutes a refusal to rent or lease, a denial of a housing accommodation, or the withholding of a housing accommodation, because of disability in violation of Article 15 of the New York Executive Law § 296(5)(a)(1).

59.     The Defendant's conduct constitutes an unlawful discriminatory practice by a real estate broker, real estate salesperson, or employee or agent thereof, by refusing to rent or lease a housing accommodation, refusing to negotiate for the rental or lease of a housing accommodation, or denying or withholding a housing accommodation on account of disability,

11

in violation of Article 15 of the New York Executive Law § 296(5)(c)(1).

60.     The Defendant's conduct constitutes an unlawful discriminatory practice by a real estate broker, real estate salesperson, or employee or agent thereof, by representing that a housing accommodation is not available when it is in fact so available on account of disability, in violation of Article 15 of the New York Executive Law § 296(5)(c)(1).

61.     The Plaintiff has been injured by the Defendant's discriminatory conduct and has suffered damages as a result.

62.     The Defendant's conduct was intentional, willful, and made in disregard for the rights of others.

63.     Accordingly, the Plaintiff is entitled to actual damages, punitive damages, and injunctive relief pursuant to Article 15 of the New York Executive Law § 297(9).

## COUNT V

### New York City Human Rights Law
### (New York City Administrative Code § 8-101 et seq.)

64.     The Plaintiff repeats and realleges paragraphs 1 through 35 of this complaint as though fully set forth herein.

65.     The Plaintiff suffers from a disability as that term is defined in the New York City Administrative Code §8-102(16).

66.     The Defendant's conduct constitutes a refusal to rent or lease, or approve the rental or lease, or otherwise deny to or withhold from the Plaintiff a housing accommodation or an interest therein because of disability, in violation of the New York City Administrative Code §8-107(5)(a)(1).

67.     The Defendant's conduct constitutes an unlawful discriminatory practice

by a real estate broker, real estate salesperson, or employee or agent thereof, by refusing to rent or lease a housing accommodation or an interest therein, or denying or withholding such an accommodation or interest therein to Plaintiffs because of disability, in violation of the New York City Administrative Code §8-107(5)(c)(1).

68.    Mr. Hahn is an aggrieved person, as defined in the New York City Administrative Code §8-502(a), and has suffered damages as a result of the Defendant's discriminatory conduct.

69.    The Defendant's conduct was intentional, willful, and made in disregard for the rights of others.

70.    Accordingly, pursuant to the New York City Administrative Code §8-502, the Plaintiff is entitled to actual damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Mr. Hahn respectfully requests judgment against the Defendant as follows:

(a)    Declaring that the Defendant's discriminatory practices violate the Fair Housing Act, as amended, 42 U.S.C. §§ 3601 *et seq.*; the New York State Human Rights Law, New York Executive Law § 290 *et seq.*; and the New York City Human Rights Law, Title 8 of the New York City Administrative Code;

(b)    Enjoining the Defendant, the Defendant's agents, employees, and successors, and all other persons in active concert or participation from:

(i)    refusing to rent after the making of a bona fide offer, refusing to negotiate for the rental of, or otherwise making unavailable or denying housing to

any person based on disability;

    (ii)    representing to any person because of disability that housing is not available for lease or rental when such housing is in fact so available;

    (iii)   failing or refusing to take affirmative steps necessary to restore, as nearly as practicable, the victims of the Defendant's unlawful practices to the position they would have been in but for the discriminatory conduct;

(c)    Enjoining the Defendant from preventing Mr. Hahn from participating in Defendant's application process for rental housing, and from refusing to assist Mr. Hahn in awarding him the next available unit accessible to him given his disabilities.

(d)    Awarding such damages as will compensate Mr. Hahn fully for his loss of a housing opportunity and economic losses, as well the humiliation, embarrassment, emotional distress, inconvenience, and medical damages Mr. Hahn has suffered due to the Defendant's discriminatory conduct, pursuant to 42 U.S.C. § 3613(c), Article 15 of the New York Executive Law § 297(9), and the New York City Administrative Code §8-502;

(e)    Awarding punitive damages to Mr. Hahn pursuant to 42 U.S.C. § 3613(c), Article 15 of the New York Executive Law § 297(9), and the New York City Administrative Code §8-502;

(f)    Awarding Mr. Hahn reasonable attorneys' fees, costs and expenses incurred in prosecuting this action pursuant to 42 U.S.C. § 3613(c), Article 15 of the New York Executive Law § 297(10) and the New York City Administrative Code §8-502; and

(g)    Granting Mr. Hahn such other further relief as may be just and proper.

## **JURY DEMAND**

The Plaintiff hereby demands a trial on the merits by jury pursuant to Fed. R. Civ. P. 38.

Dated: September 12, 2007
New York, New York

LATHAM & WATKINS LLP

By: _____

Kurt M. Rogers (KR-4004)
Jason A. Kolbe (JK-3857)
885 Third Avenue, Suite 1000
New York, New York 10022
Telephone: (212) 906-1200
Facsimile: (212) 751-4864

Attorneys for George Hahn