UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GEORGE HAHN,<br><br>                  Plaintiff,<br><br>v.<br><br>RENTASY RENTALS, INC.,<br><br>                  Defendants. | <u>07 Civ. 8013</u> (FM)<br><br>**SECOND AMENDED COMPLAINT**<br><br>**JURY TRIAL<br>DEMANDED** |

The Plaintiff, George Hahn ("Mr. Hahn"), by his attorneys, Latham & Watkins LLP, for his Complaint against the Defendant Rentasy Rentals, Inc. ("Rentasy"), alleges as follows:

## NATURE OF THE ACTION AND PRELIMINARY STATEMENT

1. This is a civil action by George Hahn to enforce the federal Fair Housing Act, 42 U.S.C. § 3601 *et seq.* (the "FHA"), the New York State Human Rights Law, Executive Law § 290 *et seq.*, and the New York City Human Rights Law, Title 8 of the New York City Administrative Code § 8-101 *et seq.*, and redress discrimination on the basis of disability.

1

2. In the spring of 2007, George Hahn was desperately seeking a new apartment in order to complete a course of medical treatment necessary to save his life. However, when Mr. Hahn contacted Rentasy, it refused to allow him to apply for an apartment because he is disabled. Mr. Hahn first contacted Rentasy by telephone in May 2007. He was told during the call that he did not qualify for any available apartments because he receives disability benefits. An agent or employee of Rentasy explained that Rentasy only rented to individuals who receive income from a current job and can produce a pay stub. Still searching for an apartment in early July 2007, Mr. Hahn visited Rentasy in person. During this visit, an agent or employee of Rentasy told Mr. Hahn that Rentasy could not help him because he received disability benefits.

3. Upon information and belief, Rentasy is part of a group of affiliated apartment information vendors or rental agencies operating in upper Manhattan that apply identical discriminatory policies. Mr. Hahn first contacted an agent of Rentasy by calling the same phone number used by a second, now defunct, agency called Domy Rooms, Inc. ("Domy"). Domy, too, refused to accept an application from Mr. Hahn because he receives disability benefits. Domy was formerly a named Defendant in this action, but ceased operations after being notified that Mr. Hahn might file a lawsuit. Mr. Hahn's subsequent visit to Rentasy in July 2007 came at the suggestion of a third agency with an office around the corner from Rentasy. An agent or employee of the third agency told Mr. Hahn that she could not help him because of his disability, but referred him to Rentasy, which she described as a "brother" business.

4. Rentasy intentionally discriminated against Mr. Hahn by denying him the opportunity to apply for any rental apartments because he is disabled. By declining to waive

the pay stub requirement in light of the source of Mr. Hahn's income, Rentasy also refused to provide a reasonable accommodation for Mr. Hahn's disability. Furthermore, Rentasy's policy to deny rental housing to individuals who receive disability income disproportionately harms disabled individuals.

5. Rentasy's discrimination has caused Mr. Hahn incalculable damage. He suffers from end-stage emphysema and a serious pulmonary disease. As a result of the Defendant's actions, Mr. Hahn was forced to continue living in housing that was life-threatening due to his extremely fragile health for several months. He was hospitalized three times during that period. Mr. Hahn is therefore seeking damages from Rentasy, as well as injunctive relief to prevent further discrimination.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, 28 U.S.C. § 2201 and 42 U.S.C. § 3613. This Court has supplemental jurisdiction over the New York state law and New York city law claims pursuant to 28 U.S.C. § 1367.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the Defendant Rentasy Rentals, Inc. resides in this District, the property that is the subject of the action is situated in this District, and the events giving rise to this complaint occurred in this District.

## THE PARTIES

8. The Plaintiff George Hahn is a disabled individual who currently resides with a friend at 790 Eleventh Avenue in New York, New York. In May 2007, Mr. Hahn attempted to rent an apartment in Manhattan through the Defendant Rentasy Rentals.

9. The Defendant Rentasy is a business corporation registered with the New York State Department of State. Upon information and belief, Rentasy maintains offices at 3472 Broadway in New York, New York. In May and July 2007, Rentasy discriminated against Mr. Hahn when he sought rental housing.

## FACTS

### Mr. Hahn's Disability and His Search for Rental Housing

10. Mr. Hahn was a successful systems engineer in New York until 1993, when he was diagnosed with chronic depression and anxiety. At that time, Mr. Hahn stopped working, and, based upon his mental health conditions, began receiving Social Security Disability ("SSD") benefits from the federal government. Mr. Hahn currently receives $1,749 in SSD benefits per month.

11. In addition to his mental health concerns, Mr. Hahn's physical health is deteriorating. He suffers from end-stage emphysema, a type of Chronic Obstructive Pulmonary Disease ("COPD") that intensifies over time. Mr. Hahn's doctors agree that, without proper treatment, he could die. Mr. Hahn's doctors also have diagnosed him with Macro-Bacterium Avian Intercellular Syndrome ("MAI"), also known as Lady Windermere's Syndrome, which is a pulmonary disease related to Tuberculosis.

12. Mr. Hahn has great difficulty breathing and completing ordinary tasks. He must carry an oxygen tank with him at all times. Because he is unable to walk more than one block without having to stop and rest, his doctors have prescribed the use of a motorized wheelchair. Mr. Hahn can no longer climb stairs.

13. Mr. Hahn has been hospitalized seven times over the past two years for pneumonia and infections related to his emphysema. Three of those hospitalizations took place

after May 2007.

14. Treatment for Mr. Hahn's COPD and MAI is very costly. Although he receives Medicaid, he must pay $1,000 in deductible expenses each month to offset the cost of medical care.

15. Unfortunately, Mr. Hahn's significant health care costs and limited income constrain his housing options. Except for a two-week stint in a nursing home and several hospital stays in the spring and summer of 2007, Mr. Hahn was forced to live in an apartment with a roommate who is a chronic cigarette smoker until December 2007. The apartment was on the fourth floor of a building without an elevator, making it impossible for Mr. Hahn to use his wheelchair. This housing situation significantly impaired Mr. Hahn's health.

16. The fact that appropriate housing is a prerequisite to receiving a life-saving lung transplant made Mr. Hahn's need for a safe place to live even more acute in the spring of 2007. In November 2005, Mr. Hahn met with pulmonary specialists at the Columbia-Presbyterian Lung Transplant Program ("Lung Transplant Program"). They told him that he would probably qualify for a transplant based on need. However, they cautioned that dangerous living conditions might prevent Mr. Hahn from being placed on the recipient list. Prior to authorizing the transplant procedure, doctors must make sure that each patient has a safe long-term recovery environment.

17. Sadly, concerns about Mr. Hahn's housing proved to be well-founded. Since 2005, Mr. Hahn has taken, and failed, several screening tests for receiving a lung transplant. In one test, his blood sample tested positive for nicotine, due to the second-hand smoke in his apartment. In another test taken in May of 2007, he met every requirement

5

delineated by the Lung Transplant Program except for the living arrangement rules.

18. Mr. Hahn's doctors are continuing to monitor his eligibility, and will initiate the screening process again as soon as he informs them that he has secured appropriate housing. They have reiterated, however, that until Mr. Hahn does so, he cannot receive a lung transplant.

19. Mr. Hahn has been searching for a safe, affordable place to live since 2005. Because he has had great difficulty finding a suitable, affordable apartment, he also has applied for public housing. Recently, he participated in an interview with a public housing authority concerning his application for rental assistance, and he is currently awaiting the results of his application. In the meantime, he temporarily is living with a friend.

**Mr. Hahn Searches for an Apartment by Calling Domy Rooms**

20. On or about May 27, 2007, Mr. Hahn found a Craig's List posting on the internet for rooms available to rent on a weekly basis. The posting advertised prices as low as $100–$125 per week, which Mr. Hahn could afford to pay. It was listed under the name Domy Rooms, and included the phone number (212) 491-9843.

21. Mr. Hahn called the listed number, and asked the woman who answered the phone whether Domy Rooms had any rooms available for rent. She said that Domy Rooms did have rooms available. Mr. Hahn then asked about the application process. The woman listed the items Mr. Hahn would need to bring to Domy Rooms' offices, one of which was a pay stub and made it clear that Domy Rooms wanted to rent to individuals who were employed. When Mr. Hahn mentioned that he received federal SSD income because of his disability, the woman stated that she could not help Mr. Hahn, and hung up the phone.

**Mr. Hahn Searches for an Apartment by Calling Rentasy Rentals**

22. On or about May 29, 2007, Mr. Hahn saw another advertisement for

6

rooms available for rent and called the listed phone number, (212) 491-9843. The advertisement did not list a business name, so Mr. Hahn could not tell what company posted it. Mr. Hahn did not realize that the phone number listed was the same number that he had called on or about May 27, 2007.

23. A woman answered the phone, and referred Mr. Hahn to a man after he stated that he was calling about the Craig's List advertisement. Mr. Hahn told this individual that he was interested in the rooms advertised for rent. The man told Mr. Hahn to bring a picture identification, the first week's rent, a $50 application fee and a $100 agency fee to 3472 Broadway between 141st and 142nd Streets in New York.

24. Upon information and belief Rentasy was the only weekly room rental service operating out of offices at 3472 Broadway in New York on May 29, 2007. Thus, upon information and belief the man was directing Mr. Hahn to the offices of Rentasy located at 3472 Broadway in New York.

25. Mr. Hahn was also told that he would need to bring his pay stubs. Mr. Hahn replied that he did not have any pay stubs because he received SSD payments for his disability. The man told Mr. Hahn that they only rented apartments to individuals who received paychecks.

26. Upon information and belief, the second individual who spoke to Mr. Hahn was an employee or agent of Rentasy.

**Mr. Hahn Searches for an Apartment by Visiting Rentasy**

27. On July 3, 2007, Mr. Hahn still did not have a suitable place to live. He was temporarily staying in a nursing home, and desperately wanted to avoid returning to his walkup apartment with his roommate, a chronic smoker. Therefore, although transportation around New York City is extremely difficult for Mr. Hahn because of his wheelchair and the heavy oxygen tanks he must carry, he continued searching for apartments by visiting several apartment rental or referral agencies in upper Manhattan.

28. At the first agency he visited, a woman told him that she could not help him because he was disabled. Instead, she referred him to Rentasy, which she described as a "brother" organization to her agency. At her suggestion, Mr. Hahn went to Rentasy's office, located at 3472 Broadway in New York.

29. At the time, he did not remember that the person he spoke with on May 29 had mentioned 3472 Broadway. Furthermore, since the second advertisement listed no business name, he had never heard the name Rentasy before. Thus, Mr. Hahn did not realize that he had already spoken with an agent of Rentasy when he visited its office on July 3, 2007.

30. During the visit, Mr. Hahn met an employee or agent of Rentasy. That person told Mr. Hahn that he would not be able to find an apartment in Manhattan through Rentasy. The landlords Rentasy worked with in Manhattan, the man explained, would not rent to Mr. Hahn because he was disabled. Therefore, the man recommended to Mr. Hahn that he look for housing in the Bronx. Mr. Hahn filled out an application at Rentasy, but it was never taken by the Rentasy employee or agent.

**Mr. Hahn's Lawsuit and the Affiliation Between Domy Rooms and Rentasy**

31. As explained above, when Mr. Hahn visited the Rentasy office, he did not realize that he had already called Rentasy. He also did not realize there was any connection

between Rentasy and Domy. However, it is no coincidence that when he called the number listed in the second advertisement, (212) 491-9843, he was directed to 3472 Broadway. Rather, it was Rentasy that posted the second advertisement, using the same phone number as Domy Rooms. Thus, when the man on the phone referred to 3472 Broadway, he was referring to the Rentasy office—the only rental housing business with an office at that address.

32. Upon information and belief some of the individuals who formerly owned and operated Domy Rooms currently operate Rentasy as a substantially identical apartment information vendor service or rental agency.

33. Facts surrounding the commencement of the Plaintiff's lawsuit support this conclusion. In an effort to informally resolve the Plaintiff's claims without resorting to litigation, Mr. Hahn, through his counsel, sent a letter to Domy Rooms on August 27, 2007 demanding that Domy Rooms assist him in renting a room. The letter indicated that Mr. Hahn was prepared to take legal action to redress Domy Rooms' violation of federal and state fair housing laws. After Domy Rooms failed to respond to this letter, the Plaintiff commenced this action by filing a complaint against Domy Rooms (the "Complaint") on September 12, 2007.

34. On September 13, 2007, the Plaintiff attempted to serve the Complaint on Domy Rooms at 3668 Broadway. However, the offices that had been occupied by Domy Rooms at the time of the inquiries made by Mr. Hahn and the fair housing testers were suddenly vacant.

35. Advertisements posted for Domy Rooms and Rentasy show that both provide substantially identical services. The first posting that Mr. Hahn saw for Domy offers rooms for rent in Manhattan and the Bronx for as low as $100–$125 per week. An advertisement for Rentasy obtained from Craig's List in October, 2007 likewise offers rooms

for rent in locations including Manhattan and the Bronx for $125 per week.

36. Each of those postings also resembles a third advertisement obtained from Craig's List, while not using the names "Rentasy" or "Domy," offers rooms for rent in locations including Manhattan and the Bronx for $125 per week, and lists 3472 Broadway as the contact address. This advertisement proclaims "$125" in large print at the top, which is a feature shared by both the Domy advertisement and the advertisement without a business name viewed by Mr. Hahn.

37. Upon information and belief Rentasy is actively renting rooms. The website operated by Rentasy Rentals, http://www.rentasy.com/home.htm, includes a photograph of a storefront with a large sign that says "Rentasy." Under the caption "Our Brand new office in Manhattan," the text surrounding the photograph invites viewers to "Visit our recently opened office" located at 3472 Broadway. The page also has a notation at the top that reads "Updated 2007."

## COUNT I

### Violation of Federal Fair Housing Act, 42 U.S.C. § 3601(f)(1): Refusal to Rent

38. The Plaintiff repeats and realleges paragraphs 1 through 37 of this complaint as though fully set forth herein.

39. Mr. Hahn is handicapped as that term is defined in the Fair Housing Act, 42 U.S.C. § 3602(h).

40. The Defendant's conduct constitutes discrimination in the sale or rental of a dwelling, or a denial of a dwelling to a buyer or renter because of a handicap of that buyer or renter, in violation of the Fair Housing Act, 42 U.S.C. § 3604(f)(1)(A).

41. The Defendant's conduct was intentional, willful, and made in disregard

for the rights of others.

42. Mr. Hahn is an aggrieved person as defined in 42 U.S.C. § 3602(i), has been injured by the Defendant's discriminatory conduct, and has suffered damages as a result.

43. Accordingly, under 42 U.S.C. § 3613(c), the Plaintiff is entitled to actual damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs.

## COUNT II

### Violation of Federal Fair Housing Act, 42 U.S.C. § 3601(f)(3): Failure to Provide Reasonable Accommodation

44. The Plaintiff repeats and realleges paragraphs 1 through 43 of this complaint as though fully set forth herein.

45. Mr. Hahn is handicapped as that term is defined in the Fair Housing Act, 42 U.S.C. § 3602(h).

46. The Defendant's policy is to rent only to people who are employed. Because Mr. Hahn is not able to work due to his disability, he requested a reasonable accommodation by asking the Defendant to consider his SSD benefits the same as the equivalent amount of employment income. The Defendant refused.

47. The accommodation requested was reasonable and necessary to afford Mr. Hahn equal opportunity to housing available through the Defendant.

48. The proposed accommodation would not have imposed an undue financial or administrative burden on the Defendant and did not require a fundamental alteration in the nature of the operations of the Defendant.

49. The Defendant's conduct thus constitutes a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford a handicapped person equal opportunity to use and enjoy a dwelling, 42

U.S.C. § 3604(f)(3)(B).

50. Mr. Hahn is an aggrieved person as defined in 42 U.S.C. § 3602(i), has been injured by the Defendant's discriminatory conduct, and has suffered damages as a result.

51. Accordingly, under 42 U.S.C. § 3613(c), the Plaintiff is entitled to actual damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs.

## COUNT III

### Violation of Federal Fair Housing Act, 42 U.S.C. § 3601(f)(1): Disparate Impact

52. The Plaintiff repeats and realleges paragraphs 1 through 51 of this complaint as though fully set forth herein.

53. Mr. Hahn is handicapped as that term is defined in the Fair Housing Act, 42 U.S.C. § 3602(h).

54. The Defendant's stated policy of refusing to accept individuals receiving SSD benefits can only affect individuals who are disabled. Additionally, the Defendant's broader policy of requiring that all renters receive paychecks from employers excludes a disproportionate number of disabled individuals.

55. The Defendant's conduct thus results in discrimination against handicapped individuals, in violation of 42 U.S.C. § 3601(f)(1).

56. Mr. Hahn is an aggrieved person as defined in 42 U.S.C. § 3602(i), has been injured by the Defendant's discriminatory conduct, and has suffered damages as a result.

57. Accordingly, under 42 U.S.C. § 3613(c), the Plaintiff is entitled to actual damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs.

## COUNT IV

### New York State Human Rights Law
### (N.Y. Executive Law § 290 et seq.)

58. The Plaintiff repeats and realleges paragraphs 1 through 57 of this complaint as though fully set forth herein.

59. The Plaintiff suffers from a disability as that term is defined in Article 15 of the New York Executive Law § 292(21).

60. The Defendant's conduct constitutes a refusal to rent or lease, a denial of a housing accommodation, or the withholding of a housing accommodation, because of disability in violation of Article 15 of the New York Executive Law § 296(5)(a)(1).

61. The Defendant's conduct constitutes an unlawful discriminatory practice by a real estate broker, real estate salesperson, or employee or agent thereof, by refusing to rent or lease a housing accommodation, refusing to negotiate for the rental or lease of a housing accommodation, or denying or withholding a housing accommodation on account of disability, in violation of Article 15 of the New York Executive Law § 296(5)(c)(1).

62. The Defendant's conduct constitutes a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford a person with a disability equal opportunity to use and enjoy a dwelling, in violation of Article 15 of the New York Executive Law § 296(18)(2).

63. The Defendant's conduct constitutes an unlawful discriminatory practice by a real estate broker, real estate salesperson, or employee or agent thereof, by representing that a housing accommodation is not available when it is in fact so available on account of disability, in violation of Article 15 of the New York Executive Law § 296(5)(c)(1).

64. The Plaintiff has been injured by the Defendant's discriminatory conduct and has suffered damages as a result.

65. The Defendant's conduct was intentional, willful, and made in disregard

13

for the rights of others.

66. Accordingly, the Plaintiff is entitled to actual damages, punitive damages, and injunctive relief pursuant to Article 15 of the New York Executive Law § 297(9).

## COUNT V

### New York City Human Rights Law
### (New York City Administrative Code § 8-101 et seq.)

67. The Plaintiff repeats and realleges paragraphs 1 through 66 of this complaint as though fully set forth herein.

68. The Plaintiff suffers from a disability as that term is defined in the New York City Administrative Code §8-102(16).

69. The Defendant's conduct constitutes a refusal to rent or lease, or approve the rental or lease, or otherwise deny to or withhold from the Plaintiff a housing accommodation or an interest therein because of disability, in violation of the New York City Administrative Code §8-107(5)(a)(1).

70. The Defendant's conduct constitutes an unlawful discriminatory practice by a real estate broker, real estate salesperson, or employee or agent thereof, by refusing to rent or lease a housing accommodation or an interest therein, or denying or withholding such an accommodation or interest therein to Plaintiffs because of disability, in violation of the New York City Administrative Code §8-107(5)(c)(1).

71. The Defendant's conduct constitutes a refusal to make a reasonable accommodation to enable a person with a disability to enjoy the equal right to a housing accommodation, in violation of the New York City Administrative Code § 8-107(15)(a).

72. Mr. Hahn is an aggrieved person, as defined in the New York City

Administrative Code §8-502(a), and has suffered damages as a result of the Defendant's discriminatory conduct.

73. The Defendant's conduct was intentional, willful, and made in disregard for the rights of others.

74. Accordingly, pursuant to the New York City Administrative Code §8-502, the Plaintiff is entitled to actual damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Hahn respectfully requests judgment against the Defendant as follows:

(a) Declaring that the Defendant's discriminatory practices violate the Fair Housing Act, as amended, 42 U.S.C. §§ 3601 *et seq.*; the New York State Human Rights Law, New York Executive Law § 290 *et seq.*; and the New York City Human Rights Law, Title 8 of the New York City Administrative Code;

(b) Enjoining the Defendant, the Defendant's agents, employees, and successors, and all other persons in active concert or participation from:

   (i) refusing to rent after the making of a bona fide offer, refusing to negotiate for the rental of, or otherwise making unavailable or denying housing to any person based on disability;

   (ii) representing to any person because of disability that housing is not available for lease or rental when such housing is in fact so available;

   (iii) failing or refusing to take affirmative steps necessary to restore, as nearly as practicable, the victims of the Defendant's unlawful practices to the

position they would have been in but for the discriminatory conduct;

(c) Enjoining the Defendant from preventing Mr. Hahn from participating in Defendant's application process for rental housing, and from refusing to assist Mr. Hahn in awarding him the next available unit accessible to him given his disabilities.

(d) Awarding such damages as will compensate Mr. Hahn fully for his loss of a housing opportunity and economic losses, as well the humiliation, embarrassment, emotional distress, inconvenience, and medical damages Mr. Hahn has suffered due to the Defendant's discriminatory conduct, pursuant to 42 U.S.C. § 3613(c), Article 15 of the New York Executive Law § 297(9), and the New York City Administrative Code §8-502;

(e) Awarding punitive damages to Mr. Hahn pursuant to 42 U.S.C. § 3613(c), Article 15 of the New York Executive Law § 297(9), and the New York City Administrative Code §8-502;

(f) Awarding Mr. Hahn reasonable attorneys' fees, costs and expenses incurred in prosecuting this action pursuant to 42 U.S.C. § 3613(c), Article 15 of the New York Executive Law § 297(10) and the New York City Administrative Code §8-502; and

(g) Granting Mr. Hahn such other further relief as may be just and proper.

## JURY DEMAND

The Plaintiff hereby demands a trial on the merits by jury pursuant to Fed. R. Civ. P. 38.

Dated: August 20, 2008
New York, New York

                                LATHAM & WATKINS LLP

                                By: _____

                                William Pearson (WP-3238)
                                Nathanael Yale (NY-5899)
                                885 Third Avenue, Suite 1000
                                New York, New York 10022
                                Telephone: (212) 906-1200
                                Facsimile: (212) 751-4864

                                Attorneys for George Hahn